UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CONSTRUCTORA MI CASITA<br>S DE RL DE CV, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | CAUSE NO. 3:16-CV-565-PPS-MGG |
| NIBCO INC., | )<br>)<br>) | |
| Defendant, | ) | |

**OPINION AND ORDER**

Plaintiff Mi Casita is a Mexican architectural, design, and construction company in Baja California that has developed a large condominium project in that area. Mi Casita used plumbing products in the construction project that were manufactured by defendant NIBCO. Mi Casita claims that the NIBCO products were defective and caused water leaks throughout the property that led to widespread property damage and required complete replacement of the plumbing in many of the condominiums at great cost to Mi Casita. Mi Casita seeks compensatory and consequential damages for the alleged damage caused by NIBCO's products.

When the pipes began to leak and cause damage to the condominium units, the owners of those units were (unsurprisingly) not particularly pleased with Mi Casita. Mi Casita has attempted to remedy the situation and that has led to a twist in this case. Nearly all of the individual condominium owners and the condominium association

1

have assigned their claims to Mi Casita. So the present lawsuit purports to bring claims both directly by Mi Casita and by Mi Casita as assignee of the condominium owners and association's claims. But there's a problem. It is far from clear from reviewing the second amended complaint which claims are based on damages suffered by Mi Casita directly versus claims assigned to it by the individual condominium owners and association.

NIBCO seeks dismissal of all claims against it for failure to state a claim. As detailed below, because I find that Mi Casita sufficiently pleaded some but not all of its claims in the second amended complaint, NIBCO's motion is granted in part and denied in part.

**BACKGROUND**

For purposes of a motion to dismiss, I will take all facts as alleged in the second amended complaint as true. Plaintiff Constructora Mi Casita S. de R.L. de C.V. is a Mexican architectural, design, and construction company that constructs condominium complexes in Baja California, Mexico. [DE 38 ¶¶1, 58.] Defendant NIBCO Inc. manufactures, warrants, advertises, and sells plumbing products and is incorporated in Elkhart, Indiana. [*Id.* at ¶¶2, 18-19.] From 2006 to 2009, Mi Casita purchased and installed NIBCO's cross-linked polyethylene plumbing tubes ("PEX Tubing"), brass fittings ("PEX Fittings"), and stainless steel clamps ("PEX Clamps"). [DE 38 at ¶¶7, 60-61.] For the sake of convenience, I will refer to these items collectively as the "PEX Products." Soon after installation, the tubing began to deteriorate and caused leaks and

2

property damage throughout the condominium development. [*Id.* at ¶7.]

Mi Casita alleges that the PEX Products suffer from a design and/or manufacturing defect that causes premature failure. [DE 38 at ¶¶28-29.] This has led to water seeping out of the pipes causing severe property damage to the condominium units and the common areas. [*Id.* at ¶28.] Mi Casita alleges that this was caused by insufficient stabilization or improper cross-linking of the material used by NIBCO. [*Id.* at ¶30.] Additionally, the PEX Fittings are prone to developing holes that allow water to seep through the walls of the fitting. [*Id.* at ¶44.] This may cause low water pressure or, if the fitting cracks or breaks, significant water damage. [*Id.*] The PEX Clamps slowly fracture from "chloride-induced stress corrosion cracking." [*Id.* at ¶47.] Stress corrosion cracking is directly related to defects in engineering design and manufacturing. [*Id.* at ¶49.] Mi Casita further alleges that NIBCO knew about the problem before it sold the products to Mi Casita because other consumers have experienced similar water damage as a result of NIBCO's defective products. [*Id.* at ¶30.]

Mi Casita selected NIBCO's products based on its representations of high quality and "superior characteristics." [*Id.* at ¶¶22-26.] For instance, NIBCO's catalog claims that its process "delivers the highest quality PEX tubing available today." [*Id.* at ¶25.] NIBCO also warranted that its PEX Tubing would be free from defects for at least 10 years. [*Id.* at ¶¶26, 79-82.] If the buyer installed the tubing with NIBCO's other PEX products, NIBCO warranted the tubing for 25 years. [*Id.* at ¶¶26, 34, 39.] The express

warranty states:

> NIBCO Inc. warrants that when NIBCO® PEX tube is used with NICBO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor.

[DE 38 at ¶¶31, 41.] Mi Casita alleges that NIBCO has refused to replace its products thus breaching this warranty. [*Id.* at ¶¶34, 114.]

As noted above, the owners of the individual condominiums got a bit cranky when water started seeping into their units and they made demands of Mi Casita to fix the leaks and property damage. [DE 38 at ¶8.] In response, Mi Casita has fixed, or intends to fix, the damage and replaced all of NIBCO's defective tubing products at great cost. [*Id.* at ¶¶65-66.] Mi Casita also has been forced to incur additional expenses related to relocation of the residents during repairs and loss of rental income. [*Id.* at ¶67.] Because of the likelihood of future claims and lawsuits, Mi Casita obtained assignments of claims from nearly all of the individual condominium owners and from the condominium association. [*Id.* at ¶¶42, 70.] Mi Casita alleges that standing in the shoes of the condominium owners through the assignment allows it to recover consequential and incidental damages otherwise barred by NIBCO's express warranty. [*Id.* at ¶90.]

Mi Casita tells me that on or around January 7, 2015, it made demands on NIBCO and allowed it to inspect the damage pursuant to the warranty. [DE 38 at ¶71.] NIBCO

4

has refused to compensate Mi Casita for damage to the property or reimburse it for the cost of replacing the faulty product. [*Id.* at ¶¶34, 88.] Mi Casita claims that it complied with all "conditions precedent" to a breach of warranty claim in accordance with the express warranty. [DE 38 at ¶¶33, 83.] It says that NIBCO was put on notice both by its requests under the warranty and because it had knowledge of the product defects at all times during the manufacturing process. [*Id.* at ¶87.] Notice remains a contested issue in this case. Mi Casita seeks compensatory and punitive damages and, curiously, asks for a declaration stating that NIBCO is responsible for all past and future claims brought by individual homeowners against Mi Casita. [*Id.* at 24.]

After some initial motion practice, we're now on the second amended complaint which contains five counts: breach of express warranty (Count I), breach of implied warranty (Count II), strict product liability pursuant to the Indiana Product Liability Act (Count III), unjust enrichment (Count IV), and Declaratory Judgment (Count V). [DE 38.] NIBCO moved to dismiss the second amended complaint. The motion has some dust on it, through no fault of the parties. As part of a district-wide redistribution of civil cases, this action was reassigned to me on May 1, 2017. [DE 45.] I granted the Parties' motions for oral argument and held a hearing on the motion to dismiss on July 21, 2017. [DE 47.]

At that hearing, I sought, among other things, to have Mi Casita clarify its claims in the second amended complaint. I also was interested in the parties' opinion on the effect on Mi Casita's claims, if any, of the condominium owners and association

5

assigning their rights to Mi Casita. I received some clarity from the parties on that issue, but it became clear that, despite two opportunities to amend its complaint, Mi Casita's claims need to be narrowed and clarified so that this action may proceed efficiently. I have attempted to do so below in ruling on the motion to dismiss. In addition, at the hearing, for the reasons stated on the record, I dismissed the unjust enrichment and declaratory judgment counts (Counts IV and V of the second amended complaint), and nothing more needs to be said about those claims. As a result, I will address the Parties' arguments as they relate to Counts I-III as well as Mi Casita's demand for punitive damages.

## ANALYSIS

NIBCO moved to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept as true all factual allegations in the second amended complaint and draw all reasonable inferences in favor of the plaintiff, but I am not required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 663.

I will begin with Count I. NIBCO makes two arguments in its motion to dismiss regarding Mi Casita's breach of express warranty claim. First, NIBCO argues that this

count should be dismissed because Mi Casita failed to plead timely notice as a condition precedent to breach of express warranty. [DE 40 at 4.] Pursuant to Section 2-607(3) of the Indiana Uniform Commercial Code, "[w]here a tender has been accepted . . . the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." "What is a 'reasonable time' within the purview of this section depends upon particular circumstances, including the existence of a course of dealing between the buyer and seller." *Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F. Supp. 2d 869, 881 (N.D. Ind. 1999) (citing *Courtesy Enter., Inc. v. Richards Labs.*, 457 N.E.2d 572 (Ind. Ct. App.1983)). That sounds like something that needs to get fleshed out in discovery. In any event, the notice need only provide notice of the factual circumstances sufficient for the seller to determine that the buyer has grounds for a claim of breach. *Id.* (collecting cases).

Mi Casita pleaded that it "complied with the terms of Defendant's express warranty, including any and all conditions precedent and all obligations owed to NIBCO related to installation of the PEX Products." [DE 38 at ¶83.] More specifically, it also pleaded that "when Plaintiff sought reimbursement from Defendant for the costs it expended and will expend, arising directly out of Defendant's defective product, Defendant refused to do so" and that "[o]n or about January 7, 2015 and thereafter, Plaintiff made demands on NIBCO pursuant to the warranty and Plaintiff permitted NIBCO to inspect the damaged condominiums" and that "Plaintiff substantially complied with its obligations under the NIBCO PEX warranty." [*Id.* at ¶¶ 9, 71.]

7

NIBCO challenges Mi Casita's assertions by arguing that Mi Casita had notice of the alleged breach as early as 2011 when 23 leaks occurred, but did not notify NIBCO of any alleged breach until three years later. [DE 40 at 4.] Mi Casita responds that it was not until after the fall of 2013, when the bulk of the leaks occurred, that it realized that these were not isolated occurrences and the result of defects in the PEX Products. [DE 41 at 7.] This exchange highlights the fact that whether the notice NIBCO received from Mi Casita was reasonable is a question of fact that should not be decided at this early stage in the litigation. Mi Casita sufficiently pleaded that it complied with the terms of the express warranty, including the notice requirement, and its express warranty claim, therefore, cannot be dismissed on this ground.

Second, NIBCO argues that if I do not dismiss Count I, I should preclude Mi Casita's recovery of incidental and consequential damages, which are expressly excluded by the express warranty. [DE 40 at 5.] "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." I.C. § 26-1-2-719(3). Similarly, waivers of incidental damages are not prohibited unless unconscionable. *Cole Energy Development Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 611 (7th Cir. 1993).

NIBCO's express warranty states:

> TO THE EXTENT PERMITTED BY LAW, THIS WARRANTY

SPECIFICALLY EXCLUDES INCIDENTAL AND CONSEQUENTIAL DAMAGES OF EVERY KIND AND EVERY DESCRIPTION, RESULTING FROM ANY CLAIMED DEFECT IN MATERIAL OR WORKMANSHIP, INCLUDING BUT NOT LIMITED TO, PERSONAL INJURIES AND PROPERTY DAMAGES.

[DE 38-1 at 2.] So, NIBCO argues, the only thing that is potentially recoverable under its express warranty is the cost of the defective products themselves. In its opposition to the motion to dismiss, Mi Casita counters that this disclaimer should not bar the relief it seeks because it is unconscionable. Specifically, Mi Casita argues that this disclaimer is unconscionable *as to the condominium owners and association* and, because Mi Casita has been assigned their rights, the disclaimer should not be enforced as to them and Mi Casita should not be precluded from recovering incidental and consequential damages. [DE 41 at 8-10.] This argument is a non-starter because unconscionability is a question of law determined at the time the contract is made and looks to the respective roles of the parties to the contract. *See* I.C. § 26-1-2-302(1) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (emphasis added)). "[T]he entire thrust of the unconscionability concept is based on the circumstances existing at the time the contract was entered into and not at some later date." *Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co.*, 412 N.E.2d 129, 131 (Ind. Ct. App. 1980).

9

Therefore, in determining whether a contract or clause thereof is unconscionable, the court must look at the state of the parties to the contract at the time the contract was entered into. *See Dan Purvis Drugs, Inc.*, 412 N.E.2d at 131; *Hoopes v. Gulf Stream Coach, Inc.*, 2014 WL 4829623, at *5 (N.D. Ind. 2014). The condominium owners and association are not parties to the express warranty; they are third-party beneficiaries. Mi Casita, therefore, cannot argue that the disclaimer is unconscionable as to the condominium owners and association and, therefore, should not be applied.

At the hearing on the motion to dismiss, Mi Casita raised an additional point that I find more persuasive. Mi Casita argued that the disclaimer in the express warranty is unconscionable because, at the time that NIBCO sold the PEX Products to Mi Casita, NIBCO knew they were defective. The Indiana Uniform Commercial Code states that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." I.C. § 26-1-2-302(2). As such, it would be ill-advised to preclude Mi Casita's recovery of incidental and consequential damages pursuant to the express warranty at this early juncture and not permit Mi Casita to present evidence as to the commercial setting of the express warranty. For all of these reasons, NIBCO's request to preclude Mi Casita's recovery of incidental and consequential damages is denied. To summarize, Count I of Mi Casita's second amended complaint, the breach of express warranty claim, survives NIBCO's motion to dismiss only as to Mi Casita's claim

against NIBCO. The condominium owners and association assignors do not have claims against NIBCO under Count I.

Next I turn to Count II, Mi Casita's breach of implied warranty claim. NIBCO argues that Mi Casita's breach of implied warranty of merchantability is duplicative of its strict product liability count and is, therefore, subsumed by the Indiana Product Liability Act. [DE 40 at 6.] NIBCO is only partially correct. As I did with Count I, I will break this claim into two pieces: (1) the claim based on the rights of the assignor condominium owners and association, and (2) the claim based on the rights of Mi Casita.

Let's start with the claims of the condominium owners and association that were assigned to Mi Casita. This is a claim that Mi Casita concedes is based in tort, and as such, it is subsumed by the Indiana Product Liability Act. The IPLA applies to "all actions that are: (1) brought by a users or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." I.C. § 34-20-1-1. As such, product liability claims sounding in tort are subsumed by the act. *See Henderson v. Freightliner, LLC*, 2005 WL 775929, at *3 (S.D. Ind. 2005) (holding that the breach of implied warranty of merchantability claim was merged into the plaintiff's IPLA claims). Mi Casita, therefore, may not pursue Count II based on any alleged rights of the assignors. Indeed, Mi Casita conceded this at the motion to dismiss hearing.

Mi Casita's claim under Count II based on its own alleged rights, however, is a

different story as it is based in contract theory. "A defective product can give rise to claims under both the IPLA and the UCC . . . [and] the IPLA supplants tort-based, but not contract-based claims for breach of implied warranty." *Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1025 (N.D. Ind. 2011); *see also Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005) ("[U]nder the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected."), *Hitachi Const. Machinery Co., Ltd. v. AMAX Coal Co.*, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000) ("Actions brought under the Act and the Uniform Commercial Code represent two different causes of action . . . [t]he Product Liability Act governs product liability actions in which the theory of liability is negligence or strict liability in tort, while the UCC governs contract cases which are based on breach of warranty. The UCC and the Product Liability Act provide alternative remedies. Furthermore, [t]he adoption of the Products Liability Act did not vitiate the provisions of the UCC." (internal quotations marks and citations omitted)).

Mi Casita pleaded that NIBCO "impliedly warranted to Plaintiff that the PEX Products were of merchantable quality and fit for the use for which they were intended . . . [and] the PEX Products were unfit for their intended use and were not of merchantable quality, as warranted by Defendant." [*See* DE 38 at ¶¶ 97-100.] This is

12

enough for a contract-based claim of breach of implied warranty. *Atkinson*, 813 F. Supp. 2d at 1026. Furthermore, for the reasons discussed above, I find that Mi Casita has sufficiently pleaded timely notice of the defect.

In addition, through a contract-based breach of implied warranty claim, a plaintiff can pursue damages for the cost of the product and the economic loss from the failure of the product. *Id.* Economic loss is defined as "the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold. Economic loss includes such incidental and consequential losses as lost profits, rental expense, and lost time." *Progressive Ins. Co. v. General Motors Corp.*, 749 N.E.2d 484, 488 (Ind. 2001) (*quoting Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069, 1074 (Ind. 1993)). Economic damage is distinct from damages to other property. *Id.* Mi Casita, therefore, may potentially recover the lost profits and rental expenses if it is successful on its breach of implied warranty claim, but may not recover for damages to "other property" such as the walls, carpet, and personal property in the condominiums and common areas. In fact, that "other property" is not the property of Mi Casita, but it is that of the assignor condominium owners and association that, as I have already discussed, do not have a valid implied warranty claim because it is subsumed by the IPLA.

I would like to make one final point regarding Count II. It may seem redundant for Mi Casita to bring both breach of express warranty and implied warranty claims. But while Mi Casita may recover the cost of the defective product under NIBCO's

13

express warranty or its implied warranty, recovery of economic loss may be barred by the disclaimer in the express warranty (if it is found not to be unconscionable). So success for Mi Casita on an implied warranty claim may permit it to recover economic losses that would otherwise be barred. And again, those losses are only the losses suffered by Mi Casita itself, not the losses incurred by the condominium owners/assignors.

Next I turn to Count III, Mi Casita's strict product liability claim pursuant to the Indiana Product Liability Act. NIBCO argues that the economic loss doctrine bars Mi Casita from recovering damages for the repair or replacement of the PEX Products and from recovering incidental and consequential damages related thereto. At the motion to dismiss hearing, Mi Casita conceded that it could not recover the cost of the repair or replacement of the PEX Products under this count. The issue before me, therefore, is whether Mi Casita can recover its economic losses and incidental and consequential damages under the IPLA.

As noted above, the economic loss doctrine bars recovery for the repair, replacement, or reconstruction of the defective product itself and other purely economic loss. *See Gunkel*, 822 N.E.2d at 152-53; *Progressive Ins. Co.*, 749 N.E.2d at 488 (Ind. 2001). The economic loss doctrine does, however, permit tort recovery for personal injury or damages to "other property," meaning property other than the defective product. *Gunkel*, 822 N.E.2d at 152. "The economic loss rule does not bar recovery in tort for damage that a separately acquired defective product or service causes to other portions

of a larger product into which the former has been incorporated." *Id.* at 156. This is where the assignment of rights of the condominium owners and association really comes into play. Mi Casita pleaded that NIBCO's defective products caused significant damage throughout the condominium development including in the units and common areas. [DE 38 at ¶¶ 7, 16, 59, 64.] This "other property" is owned by the condominium owners and association and *not* Mi Casita. Therefore, Mi Casita may only recover these damages by standing in the shoes of the condominium owners and association per their assignment of rights. So to be clear, Mi Casita may potentially recover for damage to "other property" under Count III. It may not recover for the cost of the PEX Products *or* other purely economic loss, including the costs associated with relocating residents and lost profits, under Count III. As a reminder, however, Mi Casita may potentially recovery purely economic loss if it is successful under Count II, as I discussed above.

In their briefing, the Parties specifically address Mi Casita's ability to recover the costs of mold remediation. [DE 40 at 8, DE 41 at 14; DE 43 at 2-3.] Damage caused by mold, including moldy drywall and carpet, would be damage to "other property" owned by the condominium owners and association. As I just discussed, Mi Casita may potentially recover these types of damages by standing in the shoes of the assignors. However, Mi Casita may only recover for damages to "other property" if it is "sudden, major damage." The IPLA provides a cause of action when a user or consumer's defective product causes "physical harm" to a user or consumer or their property. I.C. § 34-20-2-1. Physical harm is defined as "sudden, major damage to property" and "does

15

not include gradually evolving damage to property or economic losses from such damage." I.C. § 64-6-2-105. "The [Indiana Product Liability] Act does, for example, exclude from strict liability recoveries damage which manifests itself incrementally over time rather than in a calamitous event." *Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069, 1076 (Ind. 1993). NIBCO argues that because mold does not appear suddenly or calamitously, Mi Casita may not recover for the remediation of it under the IPLA. While I understand that mold does not appear as fast as fire, whether it may appear fast enough to be considered "sudden" under the IPLA is a question to be answered at a later stage of this litigation with the assistance of additional facts and evidence. *See Reed v. Central Soya Co. Inc.*, 644 N.E.2d 84, 86 (Ind. 1994) (finding the case required weighing, balancing, and assessing to determine whether the onset of the alleged damage within 24 hours is "sudden" damage and, therefore, denying summary judgment on the IPLA claim). At this early stage of the litigation, Mi Casita has sufficiently pleaded damage to "other property" so as to survive NIBCO's motion the dismiss Mi Casita's IPLA claim as barred by the economic loss doctrine. To summarize, while Mi Casita may not recover for the cost of the PEX Products or Mi Casita's own economic losses under Count III, it may potentially recover for damage to "other property" if the damage is sudden and major by standing in the shoes of the assignors.

Finally, I turn to Mi Casita's prayer for punitive damages. Mi Casita alleges that "the actions of Defendant were intentional, willful, outrageous and malicious and justify the imposition of punitive damages insofar as NIBCO knew of the defects in the

16

Defective PEX Products yet continued to sell the Defective PEX Products and failed to remove those products from the stream of commerce or to remedy them." [DE 38 at ¶74.] Furthermore, Mi Casita alleges that NIBCO knowingly and actively concealed the defects in the PEX Products. [*Id.* at ¶73.] Under Indiana law, to recover punitive damages, "a plaintiff must prove by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness that was not the result of mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing." *Juarez v. Menard, Inc.*, 366 F.3d 479, 482 (7th Cir. 2004) (applying Indiana law). Here, Mi Casita has sufficiently pleaded its claim for punitive damages—specifically that NIBCO knew of the defects in their PEX Products yet continued to sell them and actively concealed the defects. These allegations are sufficient to put NIBCO on notice of the claim against them. As such, NIBCO's request to strike Mi Casita's claim for punitive damages is denied.

## CONCLUSION

For the aforementioned reasons:

- NIBCO, Inc.'s motion to dismiss Plaintiff Mi Casita S. de R.L. de C.V.'s second amended complaint is **GRANTED IN PART AND DENIED IN PART** [DE 39];

- Count IV of the second amended complaint is **DISMISSED WITHOUT PREJUDICE**;

- Count V of the second amended complaint is **DISMISSED WITHOUT PREJUDICE**;

- Mi Casita sufficiently alleged a breach of express warranty claim in Count

17

I, but only as it relates to itself and not to the assignors;

- Mi Casita sufficiently alleged a breach of implied warranty of merchantability claim in Count II under a contract theory, but only as it relates to itself and not to the assignors;

- Mi Casita sufficiently alleged a strict liability claim under the Indiana Product Liability Act in Count III including a request for damages to other property as it relates to the assignors; and

- Mi Casita sufficiently alleged a claim for punitive damages.

**SO ORDERED**.

ENTERED: August 9, 2017.

    s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**