UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| CONSTRUCTORA MI CASITA, | ) | |
| S de R.L. DE C.V., | ) | |
| Plaintiff, | ) | Case No. 16-cv-00565 |
| | ) | |
| vs. | ) | |
| NIBCO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF NIBCO, INC.'S MOTION TO EXCLUDE THE EXPERT OPINIONS AND REPORT OF FRANK GALLAGHER**

Defendant, NIBCO, Inc., by and through counsel of record, for its Motion to Exclude the Expert Opinions and Report of Frank Gallagher, states as follows:

**INTRODUCTION**

Plaintiff has disclosed purported expert Frank Gallagher to offer opinions regarding the costs for the repairs for each of the condominium units at Mi Casita. (Expert report of Frank Gallagher attached hereto as Exhibit 1, p. 3). Rather than bring his stated area of "expertise" to bear and prepare an estimation of Plaintiff's alleged damages, Mr. Gallagher simply took a list of items prepared by Mi Casita in 2014, plugged those items into a computer program and wrote down the numbers it produced. He performed no assessment of whether the list of repairs provided to him by the Plaintiff were even necessary. He blindly accepted it and entered the inputs into a computer software program that estimates costs of certain items in the United States—*not Mexico*. Entering a Plaintiff's unsupported "wish list" of repair items into this computer program

took no specialized skill and resulted in an unsupported bottom line number. As such, Mr. Gallagher's testimony and report should be excluded.

## Background

Plaintiff, Constructora MiCasita S. de R.L. de C.V. ("Mi Casita"), is a design, architecture and construction company located in San Felipe, Baja California, Mexico. (ECF 38, ¶ 46). Defendant, NIBCO INC. ("NIBCO"), develops products and accessories for plumbing systems. (*Id.* at ¶ 12). Between 2006 and 2009, Mi Casita allegedly purchased NIBCO's PEX tubing from a third-party vendor, Kuroda Norte, S.A. de C.V. ("Kuroda"). (*Id*. ¶ 48). Mi Casita installed the PEX tubing at Mi Casita's real estate development in San Felipe, Mexico. (*Id*. at ¶ 47). Mi Casita has filed this products liability action against NIBCO alleging that NIBCO's PEX tubing are defectively designed and/or manufactured causing water leaks and property damage at the condominium development. (*Id*. ¶ 28).

## SUMMARY OF OPINIONS

On January 21, 2019, Mr. Gallagher submitted his expert report regarding his inspection of the condominium units and estimated repair costs. (Mr. Gallagher's January 21, 2019 expert report is attached hereto as Exhibit 2). Mr. Gallagher estimates that the total costs to repair the condominium units are $8,675,170.95. This amount includes the following: $7,673,090.87 to repair or replace units in completely built condominiums; $298,690.38 to repair or replace units in condominiums with sheet rock only; $172,619.46 to repair or replace units in condominiums with sheet rock and tile; $380,053.69 to repair condominium units with sheet rock, tile, and cabinets; and

$150,716.53 to repair or replace condominium units in shelled units with no finishes. (Ex. 2, p. 36).

**RELEVANT AUTHORITY**

Federal Rule of Evidence 702 governs the admission of expert testimony and provides that an expert may testify if:

a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b) The testimony is based on sufficient facts or data;

c) The testimony is the product of reliable principles and methods; and

d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. Evid. 702 (West, 2019). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) the United States Supreme Court made clear that a district court must ensure all expert testimony or evidence admitted "is not only relevant, but reliable." *Id*. at 589; *see also Varlen Corp. Liberty Mut. Ins. Co*., 924 F.3d 456, 459 (7th Cir. 2019). The Court must make preliminary assessments of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue," which also is characterized as the "fit" analysis. *Daubert*, 509 U.S. at 592-93; *Varlen Corp. v. Liberty Mut. Ins. Co*., 924 F.3d 456 (7th Cir. 2019)("'Rule 702's reliability elements require the district judge to determine only that the expert is providing testimony that is based on a correct application of a reliable *methodology* and that the expert considered sufficient data to employ the methodology.'" *Quoting Stollings v. Ryobi Techs*., 725 F.3d 753, 765 (7th

3

Cir. 2013). The proponent of expert testimony bears the burden to establish both relevance/fit and reliability. *Gopalratnam v. Hewlett-Packard Co*., 877 F.3d 771, 782 (7th Cir. 2017).

The courts evaluate the reliability of a qualified expert's testimony by considering: "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; (4) whether the theory has been accepted in the relevant scientific community." *Id*. at 779. *Citing Krik v. Exxon Mobil Corp*., 870 F.3d 669, 673 (7th Cir. 2017). These identified factors are not exhaustive or definitive; the "measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

A trial court should exclude an expert opinion when the analytical gap between the data and the proffered opinion is too great. *See Daubert*, 509 U.S. at 590 (to be reliable, expert testimony must be "supported by appropriate validation – *i.e.* 'good grounds,' based on what is known."). "Rule 702's reliability elements require the district judge to determine only that the expert is providing testimony that is based on a correct application of a reliable *methodology* and that the expert considered sufficient data to employ the methodology." *Gopalratnam v. Hewlett-Packard Co*., 877 F.3d 771, 779 (7th Cir. 2017).

Moreover, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap

4

between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## ARGUMENT

Mr. Gallagher has produced a report which purports to identify cost of repairs at Las Villas, however his deposition testimony made clear that these figures were not arrived at through any identifiable analytical process. In the end all that he did was take a list he was given by Plaintiff, plug those items into a computer program and produce the numbers the program spit out as his report. His opinions are unreliable, unsupported and should be barred.

Mr. Gallagher considers the report that he put forth in this case to be a conceptual estimate. (Ex. 2, 58:24-59:4). Mr. Gallagher testified that a conceptual estimate is put together before hiring a general contractor in order to provide a client "an idea" of what the total project would cost. (Ex. 2, 47:15-23). He has not prepared a formal cost proposal for work at Las Villas. (Ex. 2, 59:5-8). In order to determine the actual cost for work that is described in his report, a formal cost proposal would be required. (Ex. 2, 59:9-14). Mr. Gallagher has not put together a scope of work or estimate for a construction project at least since 2008. (Ex. 2, 49:23-50:3). Mr. Gallagher has also never put together an estimate and scope of work for construction of condominium units. (Ex. 2, 50:9-12). Additionally, Mr. Gallagher has never put together a formal cost proposal for plumbing services. (Ex. 2, 58:17-21).

Mr. Gallagher testified that in order to put together a formal cost proposal a number or steps are required. (Ex. 2, 53:4-58:4). He testified that he would:

> "hire an architect, an engineer to put together a set of documents, drawings, specifications, what have you and you go through the different

phases of design, conceptual, schematic design and construction. Once those construction documents are issued, then that's when you really put your formal cost together."

(Ex. 2, 53:4-14). In putting together a formal cost proposal, a general contractor would rely upon drawings, specifications and a request for proposal from the client. (Ex. 2, 56:11-57:1). It would also require input from the various trades that would work on the project for the general contractor. (Ex. 2, 57:2-5). A formal proposal, once accepted is something that can be acted upon, budgeted and construction can begin. (Ex. 2, 56:1-8).

What Mr. Gallagher has done here is essentially give Mi Casita an estimate. (Ex. 2, 59:15-17). That estimate, however, is not based upon any independent analysis by Mr. Gallagher and no expertise was required to generate the results he arrived at. Mr. Gallagher was simply given a list of items by the Plaintiff, plugged those into a computer program and wrote down the number those inputs produced.

At his deposition, Mr. Gallagher testified that:

Q. Looking at Exhibit 76, page 5, request number 14. It requests all documents and/or tangible items from any source containing facts or data reviewed, relied upon or considered by you related to this cause, correct?

A. Correct.

Q. And you have not produced any documents, right?

A. That's correct.

Q. So, there are no documents or tangible items from any source that contains facts or data that you relied upon?

A. What I did rely upon was an on-line cost estimating software, so to speak, called RS Means. That's the majority of what I used to put the costs together.

(Ex. 2, 19:24-20:15). RS Means is a database of costs that continually update what costs are throughout the country. (Ex. 2, 51:24-52:4).

Apart from the RS Means software, Mr. Gallagher relied upon a breakdown of costs prepared by Mi Casita in 2014. (Ex. 2, 138:13-139:22, Deposition Exhibit 81, attached as Exhibit 3). Mr. Gallagher was essentially provided a wish list from Mi Casita and changed nothing. He testified:

> Q.    So, the different description of work and materials that needed to be done, you took what they speced out and came up with your own numbers?
>
> A.    Correct.
>
> Q.    Did you add or change any of the – the specs for any of the units?
>
> A.    No.

(Ex. 2, 139:23-140:6).  Mr. Gallagher agreed that he "just went to the site so he could lay eyes on the units and then using [his] software came up with the current numbers to perform the work. *Id.* at 140:7-12.

What Mr. Gallagher did in this case required not the specialized skill of an expert, but rather a software license. He did not perform a formal cost proposal, did not identify what repairs or work needed to be performed and has shown no indication that any critical analysis or thought was given to whether the line items identified by Mi Casita were necessary. He took a list he was given by the Plaintiff, plugged the items into a computer program and acted as a scrivener for the results. Worse yet, he was unable to obtain any data regarding costs in Mexico through RS Means—which *does not* include data for construction in Mexico. *Id.* at 52:8-10; 123:15-18. Mr. Gallagher admitted that he did not know whether the original installation used one individual from the United States or all the labor from the United States. (Ex. 2, 15:17-23). He concedes that the work could be performed by a Mexican labor force, and testified that if one wanted to get a sense of what it would cost to use a Mexican labor force, you would divide the numbers

he arrived at roughly in half. (Ex. 2, 140:24-141:8). As stated in *Clark v. River Metals Recycling, L.L.C.,* "Brevity may be the soul of wit, but there is a difference between a complete but concise treatment of a subject and a failure to address the important points." *Clark v. River Metals Recycling, L.L.C.*, 929 F.3d 434, 439 (7th Cir. 2019). Here, Mr. Gallagher's opinions should be barred because his methodology, to the extent one exists, is unclear and conclusory. *Id.* at 438. He simply took a list of items provide by the Plaintiff and used a computer program to calculate what the proposed work would cost— in a completely different country than where the property is located.

## CONCLUSION

Mr. Gallagher is not presented as an expert, but rather as a rubber stamp to support damages calculations arrived at by the Plaintiff themselves. There is no evidence that Mr. Gallagher applied any independent analysis to this process, let alone the intellectual rigor he would have applied outside of the context of litigation. His opinions and report therefore do not meet the standard for admissibility for expert testimony under Federal Rule of Evidence 702 and should be barred.

WHEREFORE, the Defendant, NIBCO, Inc., respectfully requests an order granting the Motion to Exclude the Expert Opinions and Report of Frank Gallagher.

**Dated: October 30, 2019**

Respectfully submitted,

*/s/ Michael P. Turiello*
IL Bar No.: 6238272
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Phone: (312) 578-7507

8

Email: mturiello@pretzel-stouffer.com

Attorney for Defendant, NIBCO INC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that NIBCO's Memorandum in Support of its Motion to Exclude the Opinions, Testimony and Report of Frank Gallagher, was filed this 30th  day of October 2019.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and/or mail (as indicated below).  Parties may access this filing through the Court's electronic system.

Mr. Sean T. Devenney
**Drewry Simmons Vomehm, LLP**
736 Hanover Place, Suite 200
Carmel, IN 46032
Ph: (317) 580-4848
Fax: (317) 580-4855
sdevenney@dsvlaw .com


Pro Hac Vice Admission to be filed.
Mr. Gavin P. Lentz
Mr. Bryan R. Lentz
Mr. Albert M. Belmont, III
**Bochetto & Lentz, P.C.**
1524 Locust Street
Philadelphia, P A 19102
Ph: (215) 735-3900
glentz@bochettoandlentz.com
blentz@bochettoandlentz.com
abelmont@bochettoandlentz.com

Attorneys for Plaintiff,
Constructora Mi Casita, S de R.I. de C.V.


PRETZEL & STOUFFER, CHARTERED

*/s/ Michael P. Turiello*
IL Bar No.: 6238272
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Phone: (312) 578-7507
Email: mturiello@pretzel-stouffer.com
Attorney for Defendant, NIBCO INC.